**IN RE V.C.R.**

[227 N.C. App. 80 (2013)]

IN THE MATTER OF V.C.R., Juvenile

No. COA12-1127

Filed 7 May 2013

**Search and Seizure—juvenile—no probable cause**

   The trial court erred in a juvenile case by denying juvenile defendant's motion to suppress evidence seized from her person. When the officer ordered the juvenile to empty her pockets, he conducted a search lacking probable cause and not incident to arrest or custody.

STEPHENS, J., concurring with a separate opinion.

   Appeal by juvenile from order entered 23 May 2012 by Judge Jennifer J. Knox in Wake County District Court. Heard in the Court of Appeals 28 February 2013.

   *Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.*

   *Law Offices of F. Bryan Brice, Jr., by Matthew D. Quinn; and The Frickey Law Firm, PLLC, by Michael A. Frickey, for juvenile appellant.*

McCULLOUGH, Judge.

## BACKGROUND

   This case stems from an encounter between then fifteen-year-old juvenile, V.C.R., and Officer D.L. Bond of the Raleigh Police Department on 9 June 2010. On that date, Officer Bond seized some marijuana from V.C.R.'s person. This led to the State filing misdemeanor simple possession of marijuana charges against V.C.R. on 19 November 2010. Counsel for V.C.R. filed a motion to suppress on 17 February 2011, requesting the trial court

> suppress any and all evidence seized and obtained from the illegal detention, search, and seizure of the Juvenile.
>
> The Juvenile contends that the exclusion of the evidence and statements is required by the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution

IN RE V.C.R.

[227 N.C. App. 80 (2013)]

and by Article I, Sections 20 and 23 of the North Carolina Constitution.

On 21 March 2011, the trial court held an adjudicatory hearing where both Officer Bond and V.C.R. testified. Following this hearing, the trial court denied the motion to suppress and entered a dispositional order placing V.C.R. on probation for six months and imposing five 24-hour periods of intermittent confinement in a delinquency facility. The juvenile appealed, arguing that the evidence was the unlawful product of two seizures and a search that each violated the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution.

In that initial appeal, in an unpublished opinion, this Court remanded the case to the lower court so that appropriate findings of fact and conclusions of law could be entered, stating:

> [T]he record before [this Court was] inadequate to permit meaningful appellate review of the questions of law raised by V.C.R.'s appeal. Accordingly, we remand[ed] the case to the Wake County District Court for written findings of fact and conclusions of law "sufficient to resolve all issues raised by the motion to suppress."

*In re V.C.R.*, No. COA11-1108, slip op. at 3-4 (N.C. Ct. of App. 3 April 2012) (citation omitted).

In the first appeal, our Court summarized the facts as follows:

> Sergeant D.L. Bond (Bond) of the Raleigh Police Department was patrolling the Thornton's Square town home community on 9 June 2010 when he spotted a group of juveniles walking down the sidewalk. As Bond approached in his patrol car, he observed V.C.R. smoking a cigarette. Bond stopped and asked V.C.R. how old she was. V.C.R. responded that she was 15 years old. Bond asked V.C.R. to put out her cigarette and give him the pack of cigarettes she was holding. V.C.R. complied with both requests.
>
> Bond began to drive away. When he was about ten to twenty yards away, he heard a female voice say "What the f—, man." In response, Bond stopped his vehicle, got out, and approached the group. He ordered all of the juveniles to keep walking except V.C.R., whom he ordered to stay with him. He then asked V.C.R. for her identification. At

one point during their conversation, V.C.R. raised her arms in the air, revealing what appeared to be a round bulge in her right front pocket. Bond instructed V.C.R. to empty her pockets and turn them inside out. V.C.R. emptied her pockets, revealing a bag of marijuana.

*Id.*

On remand, the district court entered a written order on 23 May 2012, again denying juvenile's motion to suppress. Juvenile now appeals from the denial of that motion, as well as the resulting dispositional and adjudication orders.

### STANDARD OF REVIEW

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

### DISCUSSION

On appeal, V.C.R. again argues that the lower court erred in denying her motion to suppress. Upon remand, the juvenile court entered the following order:

### FINDINGS OF FACT

1.  On March 21, 2011, the State of North Carolina called for trial the matter of State of North Carolina vs. V.C.R.

2.  The State was represented by Assistant District Attorney Kathryn Pomeroy-Carter. The Juvenile was represented by Michael Frickey.

3.  In the night-time hours of June 9, 2010, the Juvenile was walking down the sidewalk with several other juveniles in a residential community within the City of Raleigh, smoking a cigarette. Sergeant D.L. Bond of the Raleigh Police Department, while on routine patrol, saw her and pulled over to ask her age.

4.  After the Juvenile responded that she was fifteen years old, Sergeant Bond told her to put out her

**IN RE V.C.R.**

[227 N.C. App. 80 (2013)]

cigarette and hand over her remaining cigarettes, which she did.

5. As Sergeant Bond drove away, he heard a female voice say, "What the [f—], man?" Since he believed that it was this juvenile who had said these words, Sergeant Bond stopped his patrol car, got out, and walked back to the Juvenile to speak with her.

6. As he spoke with the Juvenile about her foul language, he noticed a round bulge in her right front pocket. Based on his training and experience, Sergeant Bond believed that the object in her pocket was a bag of marijuana, so he asked her to empty her pockets, and she did so, revealing a small bag of marijuana.

7. Sergeant Bond subsequently filed a petition against this Juvenile for Simple Possession of Marijuana.

## CONCLUSIONS OF LAW

1. While the Juvenile objected to Sergeant Bond's initial stop of her (the "cigarette stop"), this objection is moot as it ended without any delinquent allegations being filed against her.

2. The Juvenile further objected to Sergeant Bond's second stop of her (the "marijuana stop").

3. N.C.G.S. 14-288.4(a)(2) makes it a Class 2 misdemeanor to intentionally cause a public disturbance by making or using "any utterance, gesture, display or abusive language which is intended and plainly likely to provoke a violent retaliation and thereby cause a breach of the peace." A "public disturbance" is defined by our General Statutes as "[a]ny annoying, disturbing, or alarming act or condition exceeding the bounds of social toleration normal for the time and place in question which occurs in a public place[.]" N.C.G.S. 14-288.1(8) (2009).

4. The Juvenile's abusive and foul language, directed at Sergeant Bond after he made her extinguish her cigarette and hand over her unsmoked cigarettes, certainly exceed the bounds of social toleration.

5. The fact that Sergeant Bond is a police officer, rather than a civilian, does not create a distinction in this case. In fact, the North Carolina Court of Appeals has previously upheld convictions for disorderly conduct when abusive language was directed at a police officer. See, e.g., State v. McLoud, 26 N.C. App. 297, 300, 215 S.E.[2]d 872, 874 (1975).

6. Therefore, Sergeant Bond had reasonable, articulable suspicion to stop the Juvenile for disorderly conduct.

7. The Juvenile further objected to Sergeant Bond's "search" of her when she handed over the marijuana in her pocket.

8. Since a "search" typically involves an actual touching of a person or object, and there is no evidence that Sergeant Bond ever touched this Juvenile, there was no search under these facts.

9. However, it appears that the Juvenile is actually objecting to her confession that she possessed marijuana, as manifested by her reaching into her own pocket and giving the contraband to Sergeant Bond upon his request.

10. In this case, the Juvenile was never in custody, thus requiring that she be informed of her Juvenile Miranda rights.

11. In addition, there is no evidence of any coercion, threats, or undue pressure by Sergeant Bond to get her to hand over the marijuana. In fact, this second encounter with the Juvenile was extremely brief, and involved hardly any conversation at all.

12. Also, it is a stretch to believe that this Juvenile was intimidated by Sergeant Bond, since she had just used abusive language towards him not 3 minutes before this second encounter.

13. The mere facts that the Juvenile was fifteen years old and that Sergeant Bond is a police officer are not enough to render her confession invalid or coerced. To rule in such a way would mean that no voluntary

statement given to a police officer by a juvenile could ever be used against them.

It is well settled that an investigatory stop must be justified upon "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 363 (1979). Reasonable suspicion is determined in a commonsense manner, not as legal technicians might, *Ornelas v. U.S.*, 517 U.S. 690, 695-96, 134 L. Ed. 2d 911, 918 (1996), and requires only a minimal level of objective justification, something more than a hunch. *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989).

Juvenile argues that the marijuana seizure here was the product of two encounters, both of which were illegal. We disagree with these contentions; nevertheless, we agree that the seizure of marijuana was illegal, and we therefore reverse the trial court's denial of V.C.R.'s motion to suppress.

As the findings of fact make clear, the first encounter began when Officer Bond saw V.C.R. smoking a cigarette while carrying a pack of cigarettes in her hand. Officer Bond verified that she was only fifteen years old before directing her to put the cigarette out and give the pack to him. The juvenile argues that the officer had no reasonable suspicion to believe that she was violating any law and that the officer acted on a mistake of law. Juvenile further argues that a mistake of law can never generate reasonable suspicion. Our Supreme Court has held otherwise, however. In *State v. Heien*, ___ N.C. ___, ___ S.E.2d ___ (No. 380PA11) (filed 14 December 2012), our Supreme Court held that an officer's mistake of law does not always result in the lack of reasonable suspicion. The statute regulating possession of tobacco products by a minor states:

(c) **Purchase by persons under the age of 18 years.**—If any person under the age of 18 years purchases or accepts receipt, or attempts to purchase or accept receipt, of tobacco products or cigarette wrapping papers, . . . the person shall be guilty of a Class 2 misdemeanor.

N.C. Gen. Stat. § 14-313(c) (2011).

Juvenile maintains that when an officer observes a person with a pack of cigarettes in his/her hand, it is unreasonable for him to conclude that that person "accepted receipt" of that item, as her "possession" is legal if she found them on the street. Juvenile's logic is flawed, however, because we are dealing with the concept of "reasonable suspicion" and not definitive proof of a statutory violation. *Terry v. Ohio*, 392 U.S. 1,

20 L. Ed. 2d 889 (1968); *Heien*, ___ N.C. ___, ___ S.E.2d ___. We believe a reasonable person would find it more likely than not that a person in possession of a pack of cigarettes had "accepted receipt" of those items, and thus the officer had reasonable suspicion to approach V.C.R. and her companions. Here, the officer had something more than reasonable suspicion that V.C.R. was in violation of N.C. Gen. Stat. § 14-313(c). The officer could have charged her with violation of this statute by writing her a citation, as "probable cause" is tested in a "commonsense" manner as well. *State v. Sinapi*, 359 N.C. 394, 398, 610 S.E.2d 362, 365 (2005); *Illinois v. Gates*, 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543 (1983).

Despite having the authority to take legal action against V.C.R., Officer Bond merely confiscated the contraband and was preparing to depart the area when V.C.R. chose to scream an obscenity which he felt was directed at him. Citing several cases dealing with the use of obscenity in the presence of police officers, juvenile argues that one has a constitutional right to yell obscenities and that the police are powerless to approach an individual acting in such a manner because any approach to a person exercising their right of free speech necessarily infringes upon the exercise of that right. The State counters that the right of free speech is not without limits and that the "fighting words" or public disturbance statute still applies, even when the speech is directed at an officer.

That statute, N.C. Gen. Stat. § 14-288.4(a)(2) reads:

> Makes or uses any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace.

While merely stating an obscenity to another individual, whether that person is a policeman or a civilian, may be protected speech, we believe an officer is not precluded from approaching any individual who is standing in public and yelling obscenities, as such actions might lead to a breach of the peace. In this case, Officer Bond's second encounter with V.C.R. can also be seen as an extension of the first. *See U.S. v. Figueroa-Espana*, 511 F.3d 696, 702 (7th Cir. 2007).

That does not end our inquiry, however. We agree with juvenile that when Officer Bond directed V.C.R.'s companions to leave and began questioning the juvenile, V.C.R. was seized and was not free to leave nor would any reasonable person feel differently. *See In re I.R.T.*, 184 N.C. App. 579, 584-85, 647 S.E.2d 129, 134 (2007) (finding a seizure where two armed uniformed officers engaged juvenile); *State v. Jackson*, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009) (asking for identification is a seizure). While we find this encounter permissible, given V.C.R.'s loud

and profane language, once she was calmly discussing matters while answering the officer's questions, the basis for continuing the seizure was rapidly dissipating. It was at this point Officer Bond directed the juvenile to empty her pockets. Directing an individual to empty their pockets constitutes a search even though the officer did not conduct it physically. By directing V.C.R. to take the items in her pockets out, he was accomplishing the search vicariously.

Officer Bond was not attempting to take a juvenile into custody pursuant to N.C. Gen. Stat. §§ 7B-1900 or -1901, as he did not follow the procedures mandated there. While normally we look at whether an officer had objective facts justifying his actions, *see Whren v. U.S.*, 517 U.S. 806, 135 L. Ed. 2d 89 (1996), here we look subjectively at the officer's conduct and find the search to be unlawful. A search incident to arrest must accompany an actual arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 65 L. Ed. 2d 633 (1980). In this case, the officer was neither taking the juvenile into custody nor effecting an arrest. He merely conducted a search. The trial court also attempted to justify the search as consensual, but the record evidence does not support that conclusion. Once V.C.R. was directed to empty her pockets, none of her actions thereafter can be considered to be consensual. Her production of the marijuana was in response to the officer's command, not some voluntary action on her part.

## CONCLUSION

In summary, we find that the officer in this case had reasonable suspicion to approach the juvenile, V.C.R., on both occasions. On the first occasion, he observed the juvenile smoking and in possession of cigarettes, while the second approach, which can also be viewed as an extension of the first, was reasonable given her behavior. The second encounter was a seizure but did not authorize a search of V.C.R., as the officer was not threatened by her behavior so that a frisk could be conducted nor was he taking V.C.R. into custody. Thus, when the officer ordered the juvenile to empty her pockets, he conducted a search for which probable cause was lacking, was not incident to arrest or custody, and therefore cannot be upheld.

The order of the trial court denying juvenile's motion to suppress is reversed.

Reversed.

Judge DILLON concurs.

Judge STEPHENS concurs in result only with a separate concurring opinion.

STEPHENS, Judge, concurring in result only.

I concur with the majority opinion in result only. I write separately because I believe that the majority opinion's resolution of Juvenile's argument regarding the constitutionality of Bond's second investigatory stop represents a misperception of the evidence before the juvenile court in this case and/or a significant departure from the well-established jurisprudence on investigatory stops.

"The right to be free from unreasonable searches and seizures applies to seizures of the person, including brief investigatory stops." *In re J.L.B.M.*, 176 N.C. App. 613, 619, 627 S.E.2d 239, 243 (2006) (citation omitted). "An investigatory stop is a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information." *State v. White*, __ N.C. App. __, __, 712 S.E.2d 921, 925 (2011) (citation, quotation marks, and brackets omitted). As the majority notes, investigatory stops are permitted only where a law enforcement officer has "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979); *see also State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007) ("A police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway.").

> An officer has reasonable suspicion if a reasonable, cautious officer, guided by his experience and training, would believe that criminal activity is afoot based on specific and articulable facts, as well as the rational inferences from those facts. . . . While something more than a mere hunch is required, the reasonable suspicion standard demands less than probable cause and considerably less than preponderance of the evidence.

*State v. Williams*, __ N.C. __, __, 726 S.E.2d 161, 167 (2012) (citations and quotation marks omitted).

In conclusion of law 6, the juvenile court concluded that Bond had reasonable and articulable suspicion to stop Juvenile for suspicion of disorderly conduct. In support of this conclusion, the court found that "Juvenile's abusive and foul language, directed at Sergeant Bond" could

**IN RE V.C.R.**

[227 N.C. App. 80 (2013)]

have fallen under subsection (a)(2) of the disorderly conduct statute. That subsection criminalizes the use of "any utterance, gesture, display[,] or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace." N.C. Gen. Stat. § 14-288.4 (2011).

The majority would find the second stop of Juvenile constitutional because "an officer is not precluded from approaching any individual who is standing in public and yelling obscenities as such actions might lead to a breach of the peace." I believe this reasoning is based upon a critical misapprehension of the law regarding investigatory stops and/or of the evidence before the juvenile court in this case. Bond would certainly have been entitled to conduct an investigatory stop of Juvenile *if he had suspected she was engaged in disorderly conduct* under section 14-288.4(a)(2). I also wholeheartedly agree with the majority that investigatory stops require a fairly low level of justification. *See Williams,* __ N.C. at __, 726 S.E.2d at 167 ("While something more than a mere hunch is required, the reasonable suspicion standard demands less than probable cause and considerably less than preponderance of the evidence.") (citations and quotation marks omitted). However, my review of the court's order and the hearing transcript reveal that the conclusion that Bond had reasonable and articulable suspicion to stop Juvenile for disorderly conduct is utterly unsupported by the findings of fact or the evidence before the court.

There were material conflicts in the evidence about Juvenile's remark, "What the fuck, man?"[1] Juvenile contended she said it to her friends, while Bond believed Juvenile made the comment to him. The court resolved that conflict, finding that the remark was directed at Bond and was "abusive." However, there was absolutely no conflict in the evidence about Bond's reaction to or understanding of the remark or the reason for the investigatory stop: Bond stopped Juvenile because he wanted to talk to her parents about her profane language, not because he suspected her of disorderly conduct.

Bond was clear and specific about the reason he returned to confront Juvenile the second time:

---

1. This single brief remark was the *only* conduct by Juvenile. While the majority opinion characterizes Juvenile's conduct as "scream[ing] an obscenity at [Bond,]" I would observe that the juvenile court found in unchallenged finding of fact 5 that Bond "heard a female voice *say*" the remark. (Emphasis added). No findings of fact or any of the evidence at the hearing suggested Juvenile *screamed* anything. Bond never testified that any remark was yelled, shouted, or screamed at him.

> At that point I was going to talk to [Juvenile] about her language and the consequences of using that type of language out in public like that. My purpose initially was to actually just get some contact information for her parents from her and, you know, make contact with her parents and explain to her parents the behavior that I witnessed.

In sum, Bond explained, his "initial objective was to get contact information for the parents to explain to them the behavior of the whole encounter."

*Nothing* in Bond's testimony suggests he anticipated any violent reaction to or breach of the peace as a result of Juvenile's remark. Bond never mentioned that he suspected any crimes were occurring or about to occur in connection with the remark, nor did he express any concern about public disturbances or disorderly conduct.

Indeed, *Bond never mentioned disorderly conduct or anything remotely connected to that offense at any point during the hearing.* The only use of that term was by the juvenile court in announcing its denial of Juvenile's motion to suppress in open court:

> THE COURT: Thank you. Well, I think the argument that — because a police officer is trained to not respond to abusive language, therefore, it's not — doesn't qualify as essentially disorderly conduct that that fails. That would leave everybody open to just go ahead and say these things and other things to police officers whenever they felt like it. Anyway, I'm going to deny the motion. Back on evidence for the State.

All of the evidence offered at the hearing makes clear that Bond (1) stopped Juvenile the second time to speak to her about her language and (2) did not "believe that criminal activity [wa]s afoot" or about to occur when he heard Juvenile's remark. *See Id.* at ___, 726 S.E.2d at 167.

As noted *supra*, Fourth Amendment jurisprudence is similarly clear that, "[a] police officer may effect a brief investigatory seizure of an individual *where the officer has reasonable, articulable suspicion that a crime may be underway." Barnard,* 184 N.C. App. at 29, 645 S.E.2d at 783 (emphasis added). This quotation from *Barnard* and a plain reading of the relevant case law reveal that (1) the *officer* who performs the investigatory stop must have a reasonable and articulable suspicion (2) *of criminal activity* (3) *at the time of the stop.* Here, Bond clearly and repeatedly articulated that, at the time of the stop, he suspected Juvenile

**IN RE V.C.R.**

[227 N.C. App. 80 (2013)]

was essentially being a disrespectful brat and he simply wanted to talk to Juvenile about her profane language and report it to her parents. Being a disrespectful brat and using profanity are not criminal offenses and, in his testimony, Bond appropriately refrained from suggesting he believed otherwise. That the *juvenile court, more than nine months after the stop occurred,* was able to articulate a *hypothetical basis* for suspecting criminal activity by Juvenile in connection with her remark is legally irrelevant and of no consequence whatsoever to this Court's consideration of the constitutionality of Bond's second stop of Juvenile.

The majority opinion's holding suggests that an investigatory stop is constitutionally permissible *even when a law enforcement officer has no suspicion whatsoever of criminal activity at the time he detains an individual.* This holding shifts this Court's constitutional analysis from a consideration of an officer's thoughts and perceptions at the time of the stop to a determination of whether the officer, or indeed a court, can come up with a hypothetical suspicion months later that could have served to justify the stop. Perhaps some disreputable law enforcement officers make investigatory stops without reasonable suspicion and later invent such hypothetical, after-the-fact justifications for purposes of their suppression hearing testimony. Here, however, Bond testified clearly and honestly about his reasons for stopping Juvenile the second time and never said he had reasonable suspicion of any criminal activity. The juvenile court essentially responded, "Don't worry, I have an idea about reasonable suspicion for you." I cannot agree with the majority that an intrusion into an individual's constitutional right against unreasonable search and seizure can be based upon a complete and unbridled lack of any evidence of reasonable suspicion, nor can I endorse this dramatic departure from the long-established precedent of this Court, our North Carolina Supreme Court, and the United States Supreme Court.

Conclusion of law 6, that Bond had reasonable articulable suspicion to stop Juvenile for disorderly conduct, is not supported by the evidence before the juvenile court or by its findings of fact. Where "the stop of the juvenile was unreasonable[,] . . . evidence obtained as a result of the illegal stop should have been suppressed[.]" *In re J.L.B.M.*, 176 N.C. App. at 623, 627 S.E.2d at 245. Thus, I would reverse the denial of V.C.R.'s motion to suppress the marijuana seized and Juvenile's statements on this basis. In the absence of this evidence, nothing remains to support Juvenile's adjudication. Accordingly, I would also vacate the juvenile court's orders adjudicating V.C.R. delinquent and entering a level 1 disposition.