IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-817

 Filed: 6 August 2019

Stanly County, No. 17CRS700160

STATE OF NORTH CAROLINA

 v.

SHAWN PATRICK ELLIS, Defendant.

 Appeal by Defendant from judgment entered 13 March 2018 by Judge Karen

Eady-Williams in Stanly County Superior Court. Heard in the Court of Appeals 27

March 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General, Kimberly N.
 Callahan, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Michele A.
 Goldman, for the Defendant.

 DILLON, Judge.

 Defendant Shawn Patrick Ellis appeals the trial court’s judgment entered upon

his guilty plea to resisting, delaying, and/or obstructing a public officer during a stop.

Defendant contends that the trial court erred in denying his motion to suppress

evidence. After careful review, we find no error.

 I. Background
 STATE V. ELLIS

 Opinion of the Court

 This case arises from Defendant’s failure to provide identification to a trooper

during a traffic stop. The trooper had initiated the stop after witnessing Defendant,

a passenger in a vehicle traveling on a public highway, wave and then extend his

middle finger in the trooper’s general direction. Defendant moved to have evidence

obtained during the stop suppressed, contending that the stop was illegal or was

illegally prolonged. Based on the trooper’s testimony, which was the only evidence

offered at the suppression hearing, the trial court orally denied Defendant’s motion.

Defendant then pleaded guilty to resisting, delaying, and/or obstructing a public

officer during a stop. Defendant appeals.

 II. Standard of Review

 Typically, we review the denial of a motion to suppress to determine “whether

competent evidence supports the trial court’s findings of fact and whether the

findings of fact support the conclusions of law.” State v. Jackson, 368 N.C. 75, 78, 772

S.E.2d 847, 849 (2015). However, in this case, the trial court did not enter any written

findings or conclusions. Rather, following testimony from the trooper and arguments

from the parties, the trial court orally denied Defendant’s motion to suppress, stating

as follows:

 Based on a review of the evidence, the Court does find
 reasonable suspicion for the stop. In addition, based on the
 totality of the evidence the Court does find probable cause
 for the arrest.

 -2-
 STATE V. ELLIS

 Opinion of the Court

 Our Supreme Court has held that the lack of specific findings in an order is not

fatal to our ability to conduct an appellate review if the underlying facts are not in

dispute. State v. Nicholson, ___ N.C. ___, ___, 813 S.E.2d 840, 843 (2018) (stating

that “when the facts are not disputed and the trial court did not make specific findings

of fact either orally or in writing, we infer the findings from the trial court’s decision

and conduct a de novo assessment of whether those findings support the ultimate

legal conclusion reached by the trial court”). And at the suppression hearing in this

matter, there was no conflict in the evidence, as the only evidence was the trooper’s

testimony. Therefore, we infer the factual findings based on the trooper’s testimony.

See Nicholson, ___ N.C. at ___, 813 S.E.2d at 843 (“[W]e consider whether the inferred

findings arising from the uncontested evidence presented by [the officer] at the

suppression hearing support the trial court’s conclusion that reasonable suspicion

existed to justify defendant’s seizure.”).1

 Also, the lack of written conclusions of law is not fatal to meaningful appellate

review, as we review a trial court’s conclusions of law de novo anyway. See State v.

McNeill, 371 N.C. 198, 220, 813 S.E.2d 797, 813 (2018) (“We review conclusions of

 1 It could be argued that it would be more appropriate to remand the matter to the trial court
to make findings, even where the trooper’s testimony is uncontradicted. Indeed, it is the State’s burden
to prove that the evidence obtained during a stop is admissible. State v. Cheek, 307 N.C. 552, 557, 299
S.E.2d 633, 636-37 (1983). And, without findings, there is no way a reviewing court can be sure
whether the trial court believed all of the trooper’s testimony. It is possible that the trial court may
have made its decision to suppress evidence while believing only a portion of the trooper’s testimony.
And it may be that a reviewing court would determine that the portion of testimony that the trial court
found credible is not sufficient to support reasonable suspicion. But, based on Nicholson, we must
assume that the trial court believed all of the trooper’s testimony.

 -3-
 STATE V. ELLIS

 Opinion of the Court

law de novo.”). That is, the lack of written conclusions does not inhibit our ability to

determine whether the findings inferred from the trooper’s testimony support a

conclusion that the stop was illegal or was illegally prolonged.

 III. Motion to Suppress

 The trial court orally concluded that the trooper had reasonable suspicion to

initiate the stop and, therefore, denied Defendant’s motion.

 The trial court’s inferred findings based on the trooper’s testimony tend to

show the following:

 The trooper was assisting a stalled motorist on the side of U.S. Highway 52 in

Albemarle County. While assisting the motorist, the trooper noticed a group of

passing vehicles, including an SUV. The trooper observed Defendant stick his arm

out of the passenger window of the SUV and make a hand-waving gesture in the

trooper’s general direction. The trooper then observed Defendant change the gesture

to an up-and-down pumping motion with his middle finger extended. The trooper

was unsure at whom Defendant was gesturing. In any event, the trooper returned to

his patrol car, pursued the SUV, and pulled the SUV over.

 The trooper approached the SUV and observed Defendant and his wife, who

was in the driver’s seat, take out their cell phones to record the traffic stop. The

trooper knocked on Defendant’s window, whereupon Defendant partially rolled it

down. The trooper asked Defendant and his wife for their identification. Defendant

 -4-
 STATE V. ELLIS

 Opinion of the Court

and his wife, however, asked the trooper why they had been stopped and stated that

the trooper had no right to stop them. Eventually, Defendant’s wife gave the trooper

her license, but Defendant refused to comply.

 The trooper requested that Defendant step out of the vehicle, and Defendant

eventually stepped out onto the side of the road. The trooper then handcuffed

Defendant and placed him into his patrol car. While in the patrol car, Defendant

gave the officer his name. The trooper ran warrants checks and obtained no results

for Defendant nor his wife. The trooper then issued Defendant a citation for resisting,

delaying, and obstructing an officer and allowed Defendant and his wife to leave.

 We conclude that the trooper had reasonable suspicion to initiate the stop. We

note Defendant’s contention that the trooper’s stop was unreasonable from the outset

because it is not a crime for one to raise his middle finger at a trooper, as such conduct

is simply an exercise of free speech protected by the First Amendment of the United

States Constitution.2 U.S. Const. amend. I (“[The legislature] shall make no

law . . . abridging the freedom of speech[.]”). Indeed, there are a number of decisions

from courts across the country where it was held that one cannot be held criminally

liable for simply raising his middle finger at an officer.3

 2 As applied to the states via the Fourteenth Amendment of the United States Constitution.
 3 See, e.g., Cruise-Gulyas v. Minard, 918 F.3d 494, 497 (6th Cir. 2019) (“Any reasonable officer
would know that a citizen who raises her middle finger engages in speech protected by the First
Amendment.”); Freeman v. State, 302 Ga. 181, 186, 805 S.E.2d 845, 850 (2017) (“[A] raised middle
finger, by itself, does not, without more, amount to fighting words[.]” (emphasis added)); Duran v.

 -5-
 STATE V. ELLIS

 Opinion of the Court

 But the issue here is not whether Defendant’s conduct as witnessed by the

trooper – Defendant displaying a middle finger – constitutes a crime. Indeed,

Defendant was not charged for any crime based on that particular conduct.

 Rather, the issue is whether the trooper had reasonable suspicion that criminal

activity was afoot. See State v. Barnard, 362 N.C. 244, 246-47, 658 S.E.2d 643, 645

(2008) (stating that an officer may initiate a stop based on specific and articulable

facts that “criminal activity is afoot”).

 Our Supreme Court has explained that the standard for “reasonable suspicion”

is lower than for “probable cause,” and does not require that there be a preponderance

of the evidence that a crime has even occurred:

 The reasonable suspicion standard is less demanding that
 probable cause and requires a showing considerably less
 than preponderance of the evidence. Police officers must
 simply be able to point to specific and articulable facts
 which, taken together with rational inferences from those
 facts, reasonably warrant the intrusion. The reasonable
 suspicion standard is therefore satisfied if an officer has
 some minimal level of objective justification for making the
 stop . . . [based on] the totality of the circumstances.

Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990) (holding vehicle passenger’s obscene gesture at an officer
through an open window, though “inarticulate and crude,” was an expression of disapproval that “fell
squarely within the protective umbrella of the First Amendment”); Swartz v. Insogna, 704 F.3d 105,
110 (2d Cir. 2013) (finding no reasonable suspicion for a stop where “[t]he only act [the officer] had
observed prior to the stop that prompted him to initiate the stop was [the defendant’s] giving-the-
finger gesture.); Cook v. Board of County Commissioners, 966 F. Supp. 1049 (D. Kan. 1997) (holding
that a private citizen has stated a claim for wrongful prosecution for disorderly conduct where the only
evidence against him was that he engaged in a single gesture of displaying his middle finger towards
a police officer).

 -6-
 STATE V. ELLIS

 Opinion of the Court

State v. Johnson, 370 N.C. 32, 34, 803 S.E.2d 137, 139 (2017) (internal citations and

marks omitted). Further, our Supreme Court has instructed that an officer’s

subjective reason for making a stop matters not; that is, it does not matter if the

officer initiates a stop merely out of anger. Rather, the reasonable suspicion standard

is “viewed from the standpoint of an objectively reasonable police officer[.]” Id. at 35,

803 S.E.2d at 139 (emphasis added).

 Here, without having to determine whether Defendant’s conduct of extending

his middle finger, in itself, constituted a crime, we conclude that the trooper had

reasonable suspicion to initiate the stop of Defendant. The trooper saw Defendant

make rude, distracting gestures while traveling on a highway in a moving vehicle in

the vicinity of other moving vehicles. A reasonable, objective officer having viewed

Defendant’s behavior could believe that a crime had been or was in the process of

being committed. For instance, the crime of disorderly conduct in North Carolina is

committed where a person “makes or uses any . . . gesture . . . intended and plainly

likely to provoke violent retaliation and thereby cause a breach of the peace.” N.C.

Gen. Stat. § 14-288.4(a)(2) (2017). Defendant’s actions, both his waving and middle

finger taken together, aimed at an unknown target could alert an objective officer to

an impending breach of the peace.

 Again, the reasonable suspicion standard may be satisfied even if the trooper

did not witness an actual crime but only enough to infer a need to investigate further.

 -7-
 STATE V. ELLIS

 Opinion of the Court

See Styles, 362 N.C. at 415, 665 S.E.2d at 440 (clarifying that “reasonable suspicion

is the necessary standard for traffic stops, regardless of whether the traffic violation

was readily observed or merely suspected”). Indeed, as our Supreme Court has

stated, even the higher “probable cause” standard does not require proof of guilt:

 [T]he evidence need not amount to proof of guilt, or even to
 prima facie evidence of guilt, but it must be such as would
 actuate a reasonable [officer] acting in good faith [to believe
 the defendant to be guilty].

State v. Bone, 354 N.C. 1, 10, 550 S.E.2d 482, 488 (2001).

 The facts of this case are similar to the facts present in In re V.C.R., in which

the defendant loudly spoke an obscenity toward an officer while standing on a public

street. See In re V.C.R., 227 N.C. App. 80, 86, 742 S.E.2d 566, 570 (2013). This Court

held that a defendant’s yelling of obscenities in public, though it “may be protected

speech,” does not preclude a determination that the officer had reasonable suspicion

to seize the defendant, as such conduct could lead to a breach of the peace in violation

of Section 14-288.4(a)(2) of our General Statutes. Id.

 Having concluded that the stop was justified, we further conclude that the

trooper was justified in detaining Defendant further based on Defendant’s refusal to

provide identification during the lawful stop, which is a crime. See State v. Friend,

237 N.C. App. 490, 493, 768 S.E.2d 146, 148 (2014) (holding that “the failure to

provide information about one’s identity during a lawful stop can constitute

resistance, delay, or obstruction within the meaning of N.C. Gen. Stat. § 14-223”).

 -8-
 STATE V. ELLIS

 Opinion of the Court

 Therefore, the trial court did not err in denying Defendant’s motion to

suppress.

 We note that the State made no argument on appeal that the trooper’s stop

was justified by the presence of “reasonable suspicion.” Specifically, in its brief and

during oral argument, the State essentially contends only that the trooper’s traffic

stop was justified under the “community caretaking” exception, which allows an

officer to initiate a stop even without the presence of reasonable suspicion of criminal

conduct. State v. Sawyers, ___ N.C. App. ___, ___,786 S.E.2d 753, 758 (2016). But it

is hard for us to fathom why the trooper would have believed that Defendant and his

wife were in need of care at the point that Defendant refused to provide his

identification. Indeed, the middle finger is, universally, not a sign of distress. And

even if there was some basis to make the initial stop based on some concern for

Defendant’s or his wife’s safety, any such concern rapidly dissipated when the officer

observed their filming and protesting the stop as he approached the SUV, well before

he asked Defendant for his identification.

 Under our appellate rules, though, since the State is the appellee, the

“reasonable suspicion” argument is not deemed abandoned on appeal. Rather, it is

our duty to affirm the trial court’s ruling if there is any legal reason to justify that

trial court’s ruling, even if that reason was not argued by the appellee. Indeed, it is

our duty to consider all possible legal bases to affirm the trial court even if the State,

 -9-
 STATE V. ELLIS

 Opinion of the Court

as appellee, had not filed a brief at all. But had the trial court ruled against the State

and the State was the appellant, then under our appellate rules, our review would be

limited to the State’s arguments made in its brief.

 IV. Sentencing

 Defendant argues that the trial court erred in calculating his Prior Record

Level (“PRL”) as III. Specifically, Defendant contends that the trial court improperly

counted a past conviction based on an error in the State’s PRL worksheet.4 The State

concedes this point and agrees that Defendant should have been sentenced at PRL

II.

 Our review of the record shows that Defendant, indeed, should have been

sentenced at PRL II. The State bears the burden of proving the existence of a

defendant’s prior convictions, but that burden may be satisfied by stipulation of the

parties. N.C. Gen. Stat. § 15A-1340.21(c) (2017). “Once a defendant makes this

stipulation, the trial court then makes a legal determination by reviewing the proper

classification of an offense so as to calculate the points assigned to that prior offense.”

State v. Arrington, ___ N.C.___, ___, 819 S.E.2d 329, 333 (2018). A PRL is a question

 4 Defendant did not object to his sentencing at trial, but his arguments are still preserved.
Failure to appeal sentencing does not waive appellate review where a defendant argues that “[t]he
sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law,
was illegally imposed, or is otherwise invalid as a matter of law.” State v. Meadows, ___ N.C. ___, ___,
821 S.E.2d 402, 406 (2018) (quoting N.C. Gen. Stat. § 15A-1446(d)(18) (2017)).

 - 10 -
 STATE V. ELLIS

 Opinion of the Court

of law and we review the trial court’s calculation de novo. State v. Gardner, 225 N.C.

App. 161, 167, 736 S.E.2d 826, 830 (2013).

 When determining a PRL in misdemeanor sentencing, level II is achieved

when a defendant has between one and four prior convictions, while level III requires

at least five prior convictions. N.C. Gen. Stat. § 15A-1340.21(b) (2017). Here, the

parties stipulated that a prior conviction for “Expired Operators’ License” was a level

2 misdemeanor, making it the fifth prior conviction in Defendant’s history. In reality,

at the time of Defendant’s current offense, possession of an expired operator’s license

was an infraction. See N.C. Gen. Stat. § 20-35(a2) (2017); N.C. Gen. Stat. § 15A-

1340.21(b) (2017) (“In determining the prior conviction level, a prior offense may be

included if it is either a felony or a misdemeanor[, but not an infraction,] at the time

the offense for which the offender is being sentenced is committed.”). Without this

infraction, Defendant’s history only shows four prior felony or misdemeanor

convictions.

 We note that, in light of our Supreme Court’s recent decision in State v.

Arrington, it would appear that the parties’ stipulation to the classification of

Defendant’s conviction as a misdemeanor is binding on this Court. Our Supreme

Court in Arrington held that the defendant’s stipulation to the existence of a prior

conviction in tandem with its classification was “properly understood to be a

stipulation to the facts of his prior offense and that those facts supported its []

 - 11 -
 STATE V. ELLIS

 Opinion of the Court

classification,” and was therefore binding on the courts as a factual determination.

Arrington, ___ N.C. at ___, 819 S.E.2d at 335.

 However, Arrington is distinguishable from the present circumstance. In

Arrington, the defendant stipulated to the appropriate classification of his prior

conviction where two possible classifications existed depending on the offender’s

factual conduct in carrying out the offense. Arrington, ___ N.C. at ___, 819 S.E.2d at

333. Here, there is no such ambiguity. As a matter of law, no misdemeanor category

crime for possession of an expired operators’ license existed at the time Defendant

was sentenced for his current offense. Therefore, there is no factual basis which

would support a misdemeanor classification for this conviction and, as a matter of

law, the parties may not stipulate to the same. Our de novo review shows that this

conviction should not have been included in determining Defendant’s PRL.

 After removing Defendant’s conviction for Expired Operators’ License from

consideration, we conclude that the trial court properly considered Defendant’s

remaining four prior convictions, giving him a PRL of II.5 N.C. Gen. Stat. § 15A-

1340.21(b) (“The prior conviction levels for misdemeanor sentencing

are: . . . Level II - - At least 1, but not more than 4 prior convictions[.]”).

 5 The worksheet stipulated to by the parties shows five additional convictions, apart from the
Expired Operators’ License infraction. But Defendant was convicted of two of these offenses on the
same day, and the trial court rightfully considered only one in calculating his PRL. N.C. Gen. Stat. §
15A-1340.21(d) (2017) (“[I]f an offender is convicted of more than one offense in a single session of
district court, or in a single week of superior court or of a court in another jurisdiction, only one of the
convictions may be used to determine the prior conviction level.).

 - 12 -
 STATE V. ELLIS

 Opinion of the Court

 V. Conclusion

 We do not reach whether Defendant’s speech/conduct in extending a middle

finger towards a trooper constitutes a crime. However, we hold that based on the

totality of the circumstances as inferred from the trooper’s unchallenged testimony,

the trooper had reasonable suspicion to initiate a stop of Defendant’s SUV. And we

hold that the trooper was justified in further detaining Defendant when he failed to

provide his identification during the stop. As such, we conclude that the trial court

did not err in denying Defendant’s motion to suppress. However, Defendant should

have been sentenced at PRL II, rather than III. We, therefore, remand to the trial

court for the limited purpose of resentencing accordingly.

 AFFIRMED IN PART; REMANDED IN PART.

 Judge BRYANT concurs.

 Judge ARROWOOD dissents by separate opinion.

 - 13 -