INMAN, Judge.
 

 *672
 
 James L. Johnson ("Defendant") appeals from an order denying his motion to suppress. On appeal, Defendant argues that the police officer who made the investigatory stop lacked sufficient reasonable suspicion to do so.
 

 *634
 
 After careful review, we reverse the judgment below and remand for further proceedings.
 

 Factual and Procedural Background
 

 The evidence presented at Defendant's suppression hearing tended to establish the following: Around 10:00 p.m. on 16 February 2013, Officer Garrett Gardin ("Officer Gardin"), a patrol officer with the Hendersonville Police Department since 2011, was on duty in his patrol vehicle stopped at a red light at the intersection of King Street and Bearcat Boulevard when Defendant's black Chevy truck pulled beside him in the left-hand turning lane. It was snowing, and the snow was just beginning to stick to the ground. Defendant was "blaring" his music "really loud" and was "revving" his engine. The speed limit was 35 miles per hour.
 

 When the light turned green, Defendant "revved his engine" and "immediately took a left turn onto Bearcat Boulevard, screeching the tires toward the back end, ... and the tailgate went towards the corner." Defendant's car never made contact with the sidewalk, and Defendant was able to "correct[ ]" the car, all the while maintaining proper lane control. According to Officer Gardin, Defendant "sped down Bearcat [Boulevard]" and then stopped at the next red light without incident. Officer Gardin "immediately" initiated a traffic stop based on "unsafe movement for the conditions of the roadway." Officer Gardin testified that, in his opinion, Defendant was driving "too fast" down Bearcat Boulevard "for what was going on at the time as far as weather was concerned."
 

 Defendant stopped his truck promptly after Officer Gardin initiated the stop. When Officer Gardin approached the truck, he observed that Defendant had red, glassy eyes and a red face. When Defendant spoke, his speech was slurred. Defendant admitted that he had consumed a
 
 *673
 
 few beers that evening. After performing various field sobriety tests, Officer Gardin placed Defendant under arrest for driving while impaired ("DWI"). Defendant blew a .13 on the Intoxilyzer.
 

 On cross-examination, Officer Gardin stated that he did not know how fast Defendant was driving down Bearcat Boulevard, noting only that he believed that it was "too fast" for the conditions given that Defendant "almost lost control making the left turn." Officer Gardin admitted that there were no other cars or pedestrians in the area and that he did not cite Defendant for any traffic violations.
 

 Defendant filed a motion to suppress the traffic stop in District Court, which was granted by Judge Peter Knight on 5 June 2014. The State appealed to Superior Court for
 
 de novo
 
 review. Following an evidentiary hearing on Defendant's motion to suppress, Judge Powell denied the motion and remanded the matter back to District Court for entry of an order and further proceedings. Defendant pled guilty to DWI in District Court and appealed the judgment to Superior Court. Defendant refiled his motion to suppress, which was again denied. Pursuant to a plea agreement, Defendant again pled guilty but preserved his right to appeal the denial of his motion to suppress. Defendant received a suspended sentence of 12 months of unsupervised probation. Defendant timely appeals.
 

 Analysis
 

 Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress because Officer Gardin lacked reasonable, articulable suspicion to stop him. We agree.
 

 "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Biber,
 

 365 N.C. 162
 
 , 167-68,
 
 712 S.E.2d 874
 
 , 878 (2011). We review the trial court's conclusions of law
 
 de novo.
 

 Id.
 
 at 168,
 
 712 S.E.2d at 878
 
 .
 

 Pursuant to
 
 Terry v. Ohio,
 

 392 U.S. 1
 
 , 30,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 , 911 (1968), an officer may conduct a traffic stop if he or she has reasonable suspicion that "criminal activity may be afoot." This includes investigatory stops made on the basis of a readily observed traffic violation or an officer's suspicion that a violation is being committed.
 
 State v. Styles,
 

 362 N.C. 412
 
 , 415-16,
 
 665 S.E.2d 438
 
 , 440-41 (2008). As our Supreme
 
 *635
 
 Court has explained, an officer "must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the intrusion."
 
 State v. Foreman,
 

 351 N.C. 627
 
 , 630,
 
 527 S.E.2d 921
 
 , 923 (2000).
 
 *674
 
 Based on the testimony of Officer Gardin, the trial court found that:
 

 1. On February 16, 2013 Hendersonville Police Department Officer G. Gardin was on routine patrol in the City of Hendersonville, and was stopped at the intersection of King Street and Bearcat Boulevard. The Defendant was also operating a vehicle, a truck, which was also stopped at the intersection, in the lane of travel next to Officer Gardin. King Street is a one-way public street in the City of Hendersonville.
 

 2. While waiting in his truck at the intersection for the light to change, the Defendant revved his truck engine, drawing the attention of Officer Gardin.
 

 3. When the light changed to green for traffic traveling in the direction of Officer Gardin and the Defendant, the Defendant abruptly accelerated his vehicle into a left-hand turn, which left-hand turn was appropriate for his lane. His vehicle "fish tailed", but the Defendant regained control of his vehicle before the rear struck the curb or left his lane of travel. Officer Garden [sic] was unable to estimate the speed of the Defendant's vehicle.
 

 4. Snow had begun falling at this time and slush was present on the roads and in the area in question.
 

 5. Officer Gardin immediately initiated a stop of the Defendant's vehicle, as it was the Officer's opinion that the Defendant's operation of his vehicle was unsafe for road conditions. The Defendant stopped his vehicle promptly, in a public vehicular area suitable for stopping.
 

 Based on these findings, the trial court denied Defendant's motion to suppress, concluding that:
 

 1. As the Defendant was stopped because of a traffic violation observed by Officer Gardin, the standard for the stop is not reasonable suspicion but whether Officer Gardin had objective probable cause to believe that the Defendant had committed a traffic violation.
 
 [1]
 

 *675
 
 2. Although the actions of the Defendant might be categorized as De minimis, and although a charge of traveling too fast for conditions may be rarely charged absent an accident, the Defendant's actions nevertheless gave probable cause for Officer Gardin to stop the Defendant's vehicle for a traffic violation.
 

 Although the trial court's findings of fact are supported by competent evidence, they do not support the conclusion that Officer Gardin had reasonable, articulable suspicion that Defendant had committed a violation of "unsafe movement" or "traveling too fast for conditions," the purported traffic offenses Officer Gardin claimed Defendant had committed.
 

 Essentially, Officer Gardin stopped Defendant based on his belief that Defendant was engaging in the following "unsafe movements" given the winter weather conditions: (1) Defendant spun his tires when making the left-hand turn onto Bearcat Boulevard; (2) the back end of Defendant's truck swerved or "fish-tailed"; and (3) Officer Gardin's belief that Defendant was driving "too fast" down Bearcat Boulevard.
 

 Generally, "unsafe movement" offenses are based on
 
 N.C. Gen. Stat. § 20-154
 
 (a), which provides:
 

 The driver of any vehicle upon a highway or public vehicular area before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to
 
 *636
 
 make such movement. The driver of a vehicle shall not back the same unless such movement can be made with safety and without interfering with other traffic.
 

 Officer Gardin's concern that Defendant was not driving safely based on the weather conditions suggests that he suspected a violation of N.C. Gen.Stat. § 20-141(a), which provides that "[n]o person shall drive a vehicle on a highway or in a public vehicular area at a speed greater than is reasonable and prudent under the conditions then existing." Subsection (m) explains that
 

 the fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the operator of a vehicle from
 
 *676
 
 the duty to decrease speed as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway, and to avoid injury to any person or property.
 

 Defendant's tires may have spun when he accelerated through the green light and the back end of Defendant's truck may have "fish tail[ed]" when he turned onto Bearcat Boulevard. However, Officer Gardin admitted that Defendant was able to maintain lane control the entire time. Defendant's truck did not make contact with the sidewalk nor did he fail to stay within his lane of travel. Consequently, there was nothing illegal about Defendant's left-hand turn onto Bearcat Boulevard.
 

 As our Supreme Court has explained, "[a]lthough a legal turn, by itself, is not sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances, such as the time, place and manner in which it is made,
 
 may
 
 constitute a reasonable, articulable suspicion which could justify an investigatory stop."
 
 State v. Foreman,
 

 351 N.C. 627
 
 , 631,
 
 527 S.E.2d 921
 
 , 923 (2000). In this case, the trial court found no "other circumstances" that provided any justification for the stop. Despite Officer Gardin's allegation that Defendant was driving "too fast" after making the turn, he testified that he had no idea how fast Defendant was actually driving on Bearcat Boulevard, a road with a 35 mile per hour speed limit. Nor did he suggest that Defendant was speeding. Although it is undisputed that there was snow falling at the time of the stop, Officer Gardin admitted that he had no trouble driving around in "an older model Crown Vic." Nothing that Officer Gardin observed Defendant doing-and nothing that the trial court found that Defendant had done-constituted unsafe driving, as defined by our statutes, even factoring in the weather conditions.
 

 Finally, we note that this Court has held that N.C. Gen. Stats. §§ 20-141(a) and 20-141(m) -subsections of the "unsafe movement" statute at issue-"establish a duty to drive with caution and circumspection and to reduce speed if necessary to avoid a collision, irrespective of the lawful speed limit or the speed actually driven."
 
 State v. Stroud,
 

 78 N.C.App. 599
 
 , 603,
 
 337 S.E.2d 873
 
 , 876 (1985). Similarly, violations for "unsafe movement" as provided for in N.C. Gen.Stat. § 20-154(a) involve a movement that "affect [s] the operation of another vehicle."
 
 Cooley v. Baker,
 

 231 N.C. 533
 
 , 536,
 
 58 S.E.2d 115
 
 , 117 (1950) ;
 
 see also
 

 State v. Ivey,
 

 360 N.C. 562
 
 , 565,
 
 633 S.E.2d 459
 
 , 461 (2006)
 
 abrogated on other grounds by
 

 State v. Styles,
 

 362 N.C. 412
 
 , 415-16,
 
 665 S.E.2d 438
 
 , 440-41 (2008) (holding that the standard for constitutional stops when an officer believes that a defendant has committed a criminal offense is
 
 *677
 
 reasonable suspicion not probable cause). Here, Defendant's left-hand turn onto Bearcat Boulevard did not affect any other traffic or increase the risk of collision to any other motorists or pedestrians.
 

 We cannot conclude that Officer Gardin had more than a hunch or generalized suspicion that Defendant violated N.C. Gen.Stat. § 20-141(a) or any other traffic law. Therefore, the trial court erred in denying Defendant's motion to suppress the evidence obtained as a result of the search.
 

 Conclusion
 

 Based on the foregoing reasons, we reverse the judgment below and remand for further proceedings.
 

 REVERSED AND REMANDED.
 

 Judges STEPHENS and HUNTER, JR. concur.
 

 [1]
 

 The trial court misstated the standard for determining whether the stop was constitutional. As explained by our Supreme Court, reasonable suspicion, not probable cause, is the appropriate standard in determining whether a traffic stop is appropriate.
 
 State v. Styles,
 

 362 N.C. 412
 
 , 415-16,
 
 665 S.E.2d 438
 
 , 440-41 (2008).