IN THE SUPREME COURT OF NORTH CAROLINA

No. 151PA16

Filed 18 August 2017

STATE OF NORTH CAROLINA

v.

JAMES L. JOHNSON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 784 S.E.2d 633 (2016), reversing a judgment entered on 3 March 2015 by Judge Mark E. Powell in Superior Court, Henderson County, and remanding for further proceedings. Heard in the Supreme Court on 21 March 2017.

*Joshua H. Stein, Attorney General, by J. Joy Strickland and J. Rick Brown, Assistant Attorneys General, for the State-appellant.*

*Jeffrey William Gillette for defendant-appellee.*

MARTIN, Chief Justice.

Defendant was stopped at a red light on a snowy evening. When the light turned green, defendant's truck abruptly accelerated, turned sharply left, and fishtailed, all in front of a police officer in his patrol car. The officer pulled defendant over for driving at an unsafe speed given the road conditions. Defendant argues that this stop was unconstitutional and seeks to suppress all of the evidence arising from it. Because we find that the officer had reasonable suspicion to stop defendant's

truck, we hold that the stop was constitutional and reverse the decision of the Court of Appeals.

Defendant was cited for driving while impaired. In district court, defendant filed a motion to suppress the evidence of his impairment, and the district court granted the motion. The State appealed the district court's order to superior court for de novo review. The superior court denied the motion and remanded the case to the district court for further proceedings.

After the case was remanded, defendant pleaded guilty to driving while impaired. Defendant appealed the district court's judgment to the superior court, where he refiled his motion to suppress. The motion came before the same superior court judge who previously heard the motion. After finding that there was "no reason to hear [the motion] again," the superior court judge indicated that, to the extent that the motion needed to be denied a second time, he was denying it. Defendant then pleaded guilty to driving while impaired in superior court while preserving his right to appeal the superior court's denial of his motion to suppress.

Defendant appealed to the Court of Appeals, which determined that the traffic stop was unconstitutional. *State v. Johnson*, ___ N.C. App. ___, ___, 784 S.E.2d 633, 636 (2016). The Court of Appeals stated that "there was nothing illegal about Defendant's left-hand turn" and held that the police officer who pulled defendant over

therefore did not have reasonable suspicion to do so. *Id*. at ___, 784 S.E.2d at 636. We allowed the State's petition for discretionary review.

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure . . . , against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Although "Article I, Section 20 of the North Carolina Constitution contains different language [than the Fourth Amendment], it provides the same protection against unreasonable searches and seizures." *State v. Elder*, 368 N.C. 70, 73, 773 S.E.2d 51, 53 (2015). "A traffic stop is a seizure 'even though the purpose of the stop is limited and the resulting detention quite brief.' " *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).

"Traffic stops have 'been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*.' " *Id*. at 414, 665 S.E.2d at 439 (citation omitted) (quoting *United States v. Delfin–Colina*, 464 F.3d 392, 396 (3d Cir. 2006)). In *Terry*, the Supreme Court of the United States held that an officer may make a brief investigatory stop of suspects walking on the street if the officer has a reasonable, articulable suspicion that "criminal activity may be afoot." 392 U.S. 1, 21, 30 (1968). Soon after, the Supreme Court applied the reasonable suspicion standard established in *Terry* to investigatory stops of vehicles near the international border. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 881-82 (1975). Several years later, the Court extended the application of the reasonable suspicion standard

to traffic stops more generally. *Prouse*, 440 U.S. at 663. In *State v. Styles*, we held that the reasonable suspicion standard applies to all traffic stops for traffic violations, "whether the traffic violation was readily observed or merely suspected." 362 N.C. at 415, 665 S.E.2d at 440.

The reasonable suspicion standard is "less demanding . . . than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* at 414, 665 S.E.2d at 439 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Police officers must simply be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry*, 392 U.S. at 21. The reasonable suspicion standard is therefore satisfied if an officer has "some minimal level of objective justification" for making the stop. *Styles,* 362 N.C. at 414, 665 S.E.2d at 439 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). To determine whether reasonable suspicion exists, courts must look at "the totality of the circumstances," *United States v. Cortez*, 449 U.S. 411, 417 (1981), as "viewed from the standpoint of an objectively reasonable police officer," *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

When reviewing a ruling on a motion to suppress, we analyze whether the trial court's "underlying findings of fact are supported by competent evidence . . . and whether those factual findings in turn support the [trial court's] ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). We address only the superior court's ruling, as we do not need to address the district court's prior

proceedings. *Cf. State v. Sparrow*, 276 N.C. 499, 507, 173 S.E.2d 897, 902 (1970) ("When an appeal of right is taken to the Superior Court, in contemplation of law it is as if the case had been brought there originally and there had been no previous trial. The judgment appealed from is completely annulled and is not thereafter available for any purpose.").

We first review the superior court's findings of fact to determine if they are supported by competent evidence.[1]  In summary, the superior court found the following facts.  Snow had started falling on the night in question, and slush had begun to accumulate on the roads.  Defendant was stopped at a red light.  Officer Garrett Gardin of the Hendersonville Police Department was stopped in the lane next to defendant's truck.  When the light turned green, defendant "abruptly accelerated" his truck and turned left.  The truck fishtailed, but defendant regained control of the truck and stayed in his lane.  Officer Gardin pulled defendant over because, in Officer Gardin's opinion, defendant was driving unsafely for the road conditions.

Officer Gardin's testimony at the suppression hearing in superior court supports these findings of fact.  The officer testified that "snowfall was going to the

---

[1] In November 2014, when this case was first before the superior court, that court issued an Order on Motion to Suppress, which contained its findings of fact and conclusions of law.  As we have already noted, after defendant pleaded guilty in district court, appealed the judgment to superior court, and renewed his motion to suppress in superior court, the motion came before the same superior court judge who had issued the November 2014 Order. Because the superior court judge found that there was "no reason to hear [the motion] again" and did not issue new findings of fact or conclusions of law, we review the findings of fact and conclusions of law that the superior court made in its November 2014 Order.

ground," that snow was "starting to hold on to the ground," and that he had to switch to an "older model" marked police car that "had snow tires on it." Defendant's truck "approached [the] left-hand side of [his] car," Officer Gardin testified, and, "right when the light turned green[,] [defendant] immediately took a left turn . . . , screeching [his] tires." In response to a question at the suppression hearing, Officer Gardin agreed that defendant's truck had "jackknifed." According to Officer Gardin, "the tail end" of the truck "was headed toward the . . . corner w[h]ere there was a sidewalk next to [some] tennis courts . . . but [the truck] never actually ma[d]e it on to the sidewalk." Officer Gardin testified that, in his opinion, defendant was driving "too fast for what was going on at the time as far as [the] weather was concerned."

We next review whether the superior court's findings of fact support its ultimate conclusion of law that the stop was constitutional.[2] As we have said, the reasonable suspicion standard applies to traffic stops "whether the traffic violation was readily observed or merely suspected." *Styles*, 362 N.C. at 415, 665 S.E.2d at 440. In making this determination, our opinion in *Styles* cited—among other opinions from federal circuit courts—both *United States v. Delfin–Colina*, 464 F.3d at 396-97, and *United States v. Chanthasouxat*, 342 F.3d 1271, 1275-76 (11th Cir. 2003). *See Styles*, 362 N.C. at 415-16, 665 S.E.2d at 440-41. While these opinions are, of course,

---

[2] In its analysis, the superior court incorrectly used probable cause, not reasonable suspicion, as the standard to determine the constitutionality of this stop. As we have already explained, however, reasonable suspicion is the proper standard here. *See Styles*, 362 N.C. at 415, 665 S.E.2d at 440.

not binding on this Court, they can help us understand how the reasonable suspicion standard applies when a police officer allegedly observes a traffic violation instead of just suspecting one. In *Delfin–Colina*, the Third Circuit stated that "an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place." 464 F.3d at 398. And in *Chanthasouxat*, the Eleventh Circuit explained that the important question when determining the constitutionality of a traffic stop after an allegedly observed violation is not "whether [the defendant is] actually guilty of committing a traffic offense," but "whether it was reasonable for [the officer] to *believe* that [a traffic offense had been committed]." 342 F.3d at 1277 (alterations in original) (quoting *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000)).[3]

Here, Officer Gardin thought that defendant was driving at an unsafe speed given the weather and the conditions of the road. Under N.C.G.S. § 20-141(a), "[n]o person shall drive a vehicle on a highway or in a public vehicular area at a speed

---

[3] Although *Chanthasouxat* itself took no position on whether the reasonable suspicion standard or the probable cause standard applied in this context, *see* 342 F.3d at 1275 & n.2, 1280, the language from *Chanthasouxat* that we have quoted comes from *United States v. Cashman*, which used a probable cause standard, *see* 216 F.3d at 587. The common thread among all of these cases, however, is best summed up in *Cashman*, which states that "the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one." *Id.* at 587, *quoted in Chanthasouxat*, 342 F.3d. at 1277. It may be that the facts necessary to make a belief reasonable can be fewer or less significant when the reasonable suspicion standard, rather than the probable cause standard, applies. But whichever standard applies, the underlying point—that an officer need not observe an actual offense as long as the officer can point to facts that give him or her a reasonable belief that an offense has been committed—is the same.

greater than is reasonable and prudent under the conditions then existing." N.C.G.S. § 20-141(a) (2015). As long as Officer Gardin reasonably believed, and had some "minimal level of objective justification" to believe, *Styles*, 362 N.C. at 414, 665 S.E.2d at 439 (quoting *Sokolow*, 490 U.S. at 7), that defendant had just driven at a speed that was greater than was reasonable and prudent for the snowy and slushy conditions that Officer Gardin was observing, then the reasonable suspicion standard was met.

As the trial court's findings of fact show, Officer Gardin was stopped at the same intersection as defendant before defendant took his sharp left turn. Officer Gardin was there when defendant's truck abruptly accelerated, turned, and fishtailed. The trial court, moreover, found that defendant "regained control" of his truck after it fishtailed, which indicates that defendant *lost* control of his truck when it fishtailed. All of these facts show that it was reasonable for Officer Gardin to believe that defendant's truck had fishtailed, and that defendant had lost control of his truck, because of defendant's abrupt acceleration while turning in the snow. It is common knowledge that drivers must drive more slowly when it is snowing, because it is easier to lose control of a vehicle on snowy roads than on clear ones. And any time that a driver loses control of his vehicle, he is in danger of damaging that vehicle or other vehicles, and of injuring himself or others. So, under the totality of these circumstances, it was reasonable for Officer Gardin to believe that defendant had violated N.C.G.S. § 20-141(a) by driving too quickly given the conditions of the road.

The Court of Appeals' decision suggests that an officer can initiate a traffic stop based on the officer's belief that he or she has just observed a traffic violation only if the officer *actually* observed a traffic violation. *See Johnson*, ___ N.C. App. at ___, 784 S.E.2d at 636. The Court of Appeals reasoned, among others things, that defendant did not commit any violation because his truck did not leave its lane or hit the curb when it fishtailed. *Id.* at ___, 784 S.E.2d at 636.

But again, in order to have reasonable suspicion to conduct a traffic stop based on a violation that an officer allegedly observed, the officer does not need to observe an actual traffic violation. To be sure, when a defendant does in fact commit a traffic violation, it is constitutional for the police to pull the defendant over. *See, e.g.*, *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). But while an actual violation is sufficient, it is not necessary. To meet the reasonable suspicion standard, it is enough for the officer to *reasonably believe* that a driver has violated the law. *See Styles*, 362 N.C. at 415-16, 665 S.E.2d at 440-41; *accord Delfin–Colina*, 464 F.3d at 398; *Chanthasouxat*, 342 F.3d at 1277 (quoting *Cashman*, 216 F.3d at 587). In other words, even if defendant could show—had he been charged with violating subsection 20-141(a)—that he had not in fact violated that subsection, the traffic stop in this case was still constitutional as long as it was reasonable for Officer Gardin to believe that he saw defendant violate that subsection. Reasonable belief is a less stringent standard than legal certainty.

The fact that defendant stayed in his lane and did not hit the curb, moreover,

does not necessarily mean that he was driving at a safe speed given the road conditions.  After all, a driver may be traveling at an unsafe speed but be able to avoid accident or injury through sheer good fortune—as indeed may have happened here when defendant lost control of his truck in a snowy intersection and fishtailed toward a sidewalk before managing to regain control.  By the same token, just because defendant did not leave the lane that he was traveling in or hit the curb does not mean that he was driving safely.

Officer Gardin had reasonable suspicion to initiate the traffic stop here, so the stop was constitutional.  As a result, the superior court correctly denied defendant's motion to suppress.  We therefore reverse the decision of the Court of Appeals.

REVERSED.