IN THE SUPREME COURT OF NORTH CAROLINA

No. 295PA17

Filed 21 December 2018

STATE OF NORTH CAROLINA

v.

TERRY JEROME WILSON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 803 S.E.2d 698 (2017), reversing and vacating a judgment entered on 13 April 2016 and reversing an order denying defendant's motion to suppress entered on 4 May 2016, both by Judge John O. Craig, III in Superior Court, Forsyth County. Heard in the Supreme Court on 27 August 2018.

*Joshua H. Stein, Attorney General, by Derrick C. Mertz, Special Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, and Sterling Rozear, Assistant Appellate Defender, for defendant-appellee.*

MARTIN, Chief Justice.

A SWAT team was sweeping a house so that the police could execute a search warrant. Several police officers were positioned around the house to create a perimeter securing the scene. Defendant penetrated this SWAT perimeter, stating that he was going to get his moped. In so doing, he passed Officer Christian, who was

stationed at the perimeter near the street. Defendant then kept going, moving up the driveway and toward the house to be searched. Officer Ayers, who was stationed near the house, confronted defendant. After a brief interaction, Officer Ayers searched defendant based on his suspicion that defendant was armed. Officer Ayers found a firearm in defendant's pocket. Defendant, who had previously been convicted of a felony, was arrested and charged with being a felon in possession of a firearm. Before trial, defendant moved to suppress evidence of the firearm on the grounds that the search violated, *inter alia*, his Fourth Amendment right under the United States Constitution "to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The trial court found that Officer Ayers "had a reasonable and articulable suspicion that the Defendant might have been armed and presently dangerous" and denied defendant's motion. Defendant then pleaded guilty, while reserving his right to appeal the denial of his motion to suppress.

Defendant appealed. The Court of Appeals held that the search was invalid because the trial court's order did not show that the search was supported by reasonable suspicion. *State v. Wilson*, ___ N.C. App. ___, 803 S.E.2d 698, 2017 WL 3480940, at *6 (Aug. 15, 2017) (unpublished). The State petitioned this Court for review, arguing that the Court of Appeals' reliance on the individualized suspicion standard was inconsistent with the decision of the Supreme Court of the United States in *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587 (1981), and that Officer

Ayers nevertheless reasonably suspected that Defendant was armed. We allowed the State's petition for review of this issue.

We hold that the rule in *Michigan v. Summers* justifies the seizure here because defendant, who passed one officer, stated he was going to get his moped, and continued toward the premises being searched, posed a real threat to the safe and efficient completion of the search. *See Bailey v. United States*, 568 U.S. 186, 200-01, 133 S. Ct. 1031, 1041-42 (2013) (citing *Summers*, 452 U.S. at 702-03, 101 S. Ct. at 2594). We also hold that both the search and seizure of defendant were supported by individualized suspicion and thus did not violate the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 28, 88 S. Ct. 1868, 1883 (1968). We therefore reverse the decision of the Court of Appeals.

The following facts are not in dispute. At around 11:00 p.m. on 21 March 2014, officers of the Winston-Salem Police Department executed a search warrant for the premises at 2300 North Glenn Avenue. This address was a residential lot with a driveway that was about eighty feet long leading to a house and another building. While the initial sweep was being conducted by a SWAT team, several uniformed officers maintained a perimeter at the edge of the property to protect the SWAT team from outside interference. The officers maintaining the perimeter wore uniforms that clearly identified them as police officers, as well as safety equipment such as Kevlar vests and ballistic helmets. In its findings of fact, the trial court stated that the police presence at 2300 North Glenn Avenue that night was such that it would be clear to

any passerby that police were engaged in an operation and intended to exclude the general public from the property. Officers Ayers and Christian were among the uniformed officers maintaining the perimeter during the search. Officer Ayers knew the area to be dangerous, having previously responded to discharges of firearms, narcotics activity, and a shooting at the location of the search.

Defendant walked onto the premises while the SWAT team was still actively securing the house. Officer Christian was standing near where the driveway connected to the street, and Officer Ayers was standing farther up the driveway, a few feet from the house. Officer Ayers saw defendant walk past Officer Christian and heard defendant say something about wanting to get his moped. Officer Ayers walked toward defendant and noticed a heavy object in defendant's pocket. Applying his training and expertise, Officer Ayers believed that the object was a firearm based on its size, shape, and apparent weight. Officer Ayers asked defendant if he was carrying any weapons, and defendant said that he was not. Officer Ayers then told defendant that he was going to frisk him for weapons and instructed defendant to turn around. When defendant turned around, Officer Ayers saw the grip of a handgun protruding from defendant's pocket. At this point, Officer Ayers seized the weapon and detained defendant. Defendant was ultimately charged with, and pleaded guilty to, possession of a firearm by a felon.

In its argument to this Court, the State asks us to apply the categorical rule from *Michigan v. Summers* to the facts of this case.[1] In *Summers*, the Supreme Court of the United States reasoned that "for Fourth Amendment purposes, . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705, 101 S. Ct. at 2595. The Supreme Court justified this rule, at least in part, on the basis that "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 702-03, 101 S. Ct. at 2594 (citing 2 Wayne R. LaFave, *Search and Seizure* § 4.9, at 150-51 (1978)). The Court has further emphasized three governmental interests that, when taken together, "justify the

---

[1] We disagree with the concurring justice's contention that the State waived merits review of the very issue—applicability of the *Summers* rule—that we accepted for discretionary review. The record shows that the trial judge considered whether the police had the authority to stop a person to protect the integrity of a scene during the execution of a search warrant. This inquiry is substantially equivalent to considering whether the *Summers* rule applies, so the trial judge appears to have determined (and we agree) that the *Summers* grounds for relief "were . . . apparent from context" and were thus preserved for appellate review. N.C. R. App. P. 10(a)(1). Furthermore, the State was the appellee at the Court of Appeals and the *Summers* rule is an alternate basis in law supporting upholding the trial court's decision. Our rules allow an appellee to argue a preserved alternate basis in law on appeal and that is what the State in fact did at the Court of Appeals. *See* N.C. R. App. P. 10(c). Put simply, given that the State prevailed before the trial court and was the appellee before the Court of Appeals, "[t]he question for review is whether the ruling of the trial court was correct" rather than "whether the reason given therefor is sound or tenable." *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 6 41, 650 (citing *State v. Blackwell*, 246 N.C. 642, 644, 90 S.E.2d 867, 869 (1957)), *cert. denied*, 484 U.S. 916, 108 S. Ct. 267, 98 L. Ed. 2d 224 (1987). As a result, the State can raise the *Summers* issue here as the appellant challenging the Court of Appeals decision.

detention of an occupant who is on the premises during the execution of a search warrant: officer safety, facilitating the completion of the search, and preventing flight." *Bailey*, 568 U.S. at 194, 133 S. Ct. at 1038 (citing *Summers*, 452 U.S. at 702-03, 101 S. Ct. at 2594). The Court has stated that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Mena*, 544 U.S. 93, 98, 125 S. Ct. 1465, 1470 (2005) (quoting *Summers*, 452 U.S. at 705 n.19, 101 S. Ct. at 2595 n.19).

The Supreme Court has further defined the category covered by the *Summers* rule on two occasions. First, in *Muehler v. Mena*, the plaintiff, suing several police officers, challenged both the use of handcuffs incident to a *Summers* seizure and the two- to three-hour duration of the seizure. *See id.* at 95-96, 125 S. Ct. at 1468-69. In finding the use of handcuffs permissible, the Court again recognized the need for police executing a search warrant to "routinely exercise unquestioned command of the situation." *Id.* at 99, 125 S. Ct. at 1470 (quoting *Summers*, 452 U.S. at 703, 101 S. Ct. at 2594). The Court also held that the seizure was permissible during the entirety of the execution of the search warrant. *See id.* at 100, 125 S. Ct. at 1471 (holding that "the 2- to 3-hour detention in handcuffs . . . [did] not outweigh the government's continuing safety interests").

Second, in *Bailey v. United States*, the Supreme Court was confronted with a defendant who was arrested almost one mile away from the location being searched.

*See* 568 U.S. at 194, 133 S. Ct. at 1038. The Court clarified that "[t]he categorical authority to detain incident to the execution of a search warrant must be limited to the immediate vicinity of the premises to be searched." 568 U.S. at 199, 133 S. Ct. at 1041. Ultimately, the Court held that the seizure in *Bailey* was unlawful because the defendant "was detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." *Id.* at 201, 133 S. Ct. at 1042. But the Court has identified several factors that courts can consider "to determine whether an occupant was detained within the immediate vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id.*

Based on this doctrinal trilogy, we can identify three parts of the *Summers* rule: "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain [(1)] the occupants," *Summers*, 452 U.S. at 705, 101 S. Ct. at 2595, (2) who are "within the immediate vicinity of the premises to be searched," *Bailey*, 568 U.S. at 201, 133 S. Ct. at 1042, and (3) who are present "during the execution of a search warrant," *id.* at 194, 133 S. Ct. at 1038 (citing *Summers*, 452 U.S. at 702-03, 101 S. Ct. at 2594); *see also Muehler*, 544 U.S. at 102, 125 S. Ct. at 1472 (holding that "the officers' detention of Mena in handcuffs during the execution of the search warrant was reasonable and did not violate the Fourth

Amendment"). These three parts roughly correspond to the "who," "where," and "when" of a lawful suspicionless seizure incident to the execution of a search warrant.

As we have discussed, the Supreme Court has already provided clear guidance as to the second and third parts of the *Summers* rule. And the application of that guidance to this case is straightforward. No one disputes that defendant was seized during the execution of a search warrant. It is also evident that defendant was seized within the immediate vicinity of the premises being searched. Defendant walked past Officer Christian, who was standing close to where the driveway connected to the street, and proceeded toward Officer Ayers, who was standing near the house being searched. When Officer Ayers stopped him, defendant was well within the lawful limits of the property containing the house being searched. And, had he not been stopped by police, defendant could easily have accessed the house. Thus the spatial requirements of the *Summers* rule were met here. *See Bailey*, 568 U.S. at 201, 133 S. Ct. at 1042.

As to the remaining part of our formulation of the *Summers* rule, we acknowledge that the Supreme Court has not directly resolved the issue of who qualifies as an "occupant" for the purposes of the *Summers* rule. Nevertheless, using the Supreme Court's reasoning that developed through the trilogy of *Summers* cases as our guidepost, we will now attempt to determine the "proper limit [that] accords with the rationale of the [*Summers*] rule." *Id.*

In *Bailey*, the Supreme Court recognized that the search of a residence "has a spatial dimension" and that the *Summers* rule must be limited "to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant." *Id.* Notably, this does not confine the *Summers* rule to the premises identified in the search warrant, but extends that rule to the immediate vicinity of those premises. *Id.* The reasoning in *Bailey* comports with the justification in *Summers* because someone who is sufficiently close to the premises being searched *could* pose just as real a threat to officer safety and to the efficacy of the search as someone who is within the premises. Applying the Supreme Court's reasoning in *Bailey* as to the spatial dimension of a search, we believe that a person is an occupant for the purposes of the *Summers* rule if he "poses a real threat to the safe and efficient execution of a search warrant." *Id.*

We believe defendant posed a real threat to the safe and efficient execution of the search warrant in this case. He approached the house being swept, announced his intent to retrieve his moped from the premises, and appeared to be armed. It was obvious that defendant posed a threat to the safe completion of the search. Defendant argues that he was not an *occupant* of the premises being searched in the ordinary sense of the word. Given defendant's actions here, however, it was apparent to Officer Ayers that defendant was attempting to enter the area being searched—or, stated another way, defendant would have *occupied* the area being searched if he had not been restrained. This understanding of occupancy is necessary given the Supreme

Court's recognition that officers may constitutionally mitigate the risk of someone entering the premises during a search "by taking routine precautions, for instance by erecting barricades or posting someone on the perimeter or at the door." *Id.* at 195, 133 S. Ct. at 1039. Indeed, if such precautionary measures did not carry with them some categorical authority for police to detain individuals who attempt to circumvent them, it is not clear how officers could practically "search without fear that occupants, who are on the premises and able to observe the course of the search, [would] become disruptive, dangerous, or otherwise frustrate the search." *Id.* at 195, 133 S. Ct. at 1038.

Defendant's own actions here caused him to satisfy the first part, the "who," of the *Summers* rule. As we have discussed, the second and third parts of the *Summers* rule, the "where" and "when," are also satisfied. The *Summers* rule, therefore, justified the seizure of defendant here.

But, because the Supreme Court has only used the *Summers* rule to justify *detentions* incident to the execution of search warrants, *see, e.g.*, *Bailey*, 568 U.S. at 194, 133 S. Ct. at 1038; *Muehler*, 544 U.S. at 98, 125 S. Ct. at 1470, we must determine separately whether the search of defendant's person was justified. In *Terry v. Ohio*, the Supreme Court determined that a brief stop and frisk did not violate a defendant's Fourth Amendment rights when "a reasonably prudent man would have been warranted in believing [the defendant] was armed and thus presented a threat to the officer's safety while he was investigating his suspicious

behavior." 392 U.S. at 28, 88 S. Ct. at 1883. In other words, an officer may constitutionally conduct what has come to be called a *Terry* stop if that officer can "reasonably . . . conclude in light of his experience that criminal activity may be afoot." *Id.* at 30, 88 S. Ct. at 1884. "The reasonable suspicion standard is a 'less demanding standard than probable cause' and 'a considerably less [demanding standard] than preponderance of the evidence.' " *State v. Bullock*, 370 N.C. 256, 258, 805 S.E.2d 671, 674 (2017) (alteration in original) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675-76 (2000)). To meet this standard, an officer "must be able to point to specific and articulable facts" and to "rational inferences from those facts" justifying the search or seizure at issue. *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. "To determine whether reasonable suspicion exists, courts must look at 'the totality of the circumstances' as 'viewed from the standpoint of an objectively reasonable police officer.' " *State v. Johnson*, 370 N.C. 32, 34-35, 803 S.E.2d 137, 139 (2017) (citation omitted) (first quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695 (1981); and then quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661-62 (1996)).

"When reviewing a ruling on a motion to suppress, we analyze whether the trial court's 'underlying findings of fact are supported by competent evidence . . . and whether those factual findings in turn support the [trial court's] ultimate conclusions of law.' " *Bullock*, 370 N.C. at 258, 805 S.E.2d at 674 (alterations in original) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)).

Here, Officer Ayers was the sole witness who testified at the suppression hearing, and the facts that he testified to were uncontested. Based on that testimony, the trial court found that the police were conducting a search at a location where there had been numerous reports of gun violence and were openly maintaining a perimeter to prevent public access to the property in question during the search. Defendant then approached the premises during the search, passing one officer in a manner that "was very unusual for a member of the general public." Officer Ayers approached defendant and observed that defendant had something in his pocket. Based on the size, weight, and shape of the object, Officer Ayers believed that the object was a gun or other weapon. Defendant told Officer Ayers that he was there to get his moped and that he was not armed. The trial court concluded that "a reasonable and prudent police officer would find [defendant's behavior] unusual" and that, based on the totality of these circumstances, Officer Ayers "had a reasonable and articulable suspicion that the Defendant might have been armed and presently dangerous."

We find no error in the trial court's reasoning. Defendant breached a police perimeter during an active SWAT team sweep. Based on his training, experience, and observations, it was reasonable for Officer Ayers to suspect that defendant was armed. Defendant then appeared to lie about being armed. Given the circumstances of the ongoing search and defendant's actions, it was reasonable to suspect that defendant was there to attack police officers on the premises or otherwise violently

interfere with the execution of the search warrant. Because any such violence would constitute criminal activity, Officer Ayers had reasonable suspicion, based on these circumstances, that criminal activity was afoot. *See Terry*, 392 U.S. at 30, 88 S. Ct. at 1884. Thus, the trial court correctly denied defendant's motion to suppress.

In this case, the Court of Appeals erred by focusing solely on one finding of fact instead of the totality of the circumstances, as *Terry* requires. *See Johnson*, 370 N.C. at 34-35, 803 S.E.2d at 139. The Court of Appeals correctly stated that " 'unusual' behavior does not necessarily equal behavior leading a reasonable officer to believe criminal activity was afoot." *Wilson*, 2017 WL 3480940, at *5. This reasoning, though, does not take into account the *particular* unusual behavior at issue here and the totality of the circumstances surrounding it. These circumstances include police officers having responded to shootings at and near the house in the past, Officer Ayers' observation that defendant was likely armed, and defendant's apparent lie about possessing a weapon.[2] Combining these circumstances with defendant's unusual choice to cross a police perimeter to purportedly retrieve his moped during an active SWAT team sweep, there were more than enough facts to establish a reasonable suspicion that criminal activity may have been afoot. *See Terry*, 392 U.S.

---

[2] The fact that defendant was actually lying is not relevant to a finding of reasonable suspicion because the lie was not confirmed until after the search. However, the fact that Officer Ayers had a reasonable suspicion that defendant was armed means that he also had a reasonable suspicion that defendant was lying when defendant said that he was not armed.

at 30, 88 S. Ct. at 1884. The warrantless detention and search of defendant therefore did not violate the Fourth Amendment.

For the reasons stated above, we reverse the decision of the Court of Appeals.

REVERSED.

Justice HUDSON, concurring in part and concurring in the result in part.

Although I agree with the majority's decision that defendant's seizure was justified here because the circumstances constituted reasonable suspicion that criminal activity was afoot under the United States Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889, 911 (1968), and that our granting of discretionary review allowed the State to argue whether *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981), applies, I disagree with the majority on four specific points. First, the majority need not have applied *Summers* when the constitutionality of the seizure and subsequent search is wholly resolved by *Terry*. Second, the trial court's colloquy with defendant's counsel during the hearing on defendant's motion to dismiss did not preserve the *Summers* issue for our review, because the interchange was not "substantially equivalent" to a *Summers* analysis. Third, the "*Summers* grounds for relief" were not "apparent from the context" at the trial court, and therefore, the *Summers* issue was not adequately preserved for review pursuant to Rule 10(a)(1) of our Rules of Appellate Procedure. *See* N.C. R. App. P. 10(a)(1). Finally, in my view our decision in *State v. Austin* does not stand for the principle that the State, as an appellee before the Court of Appeals, can bring an unpreserved constitutional issue for the first time on appeal. 320 N.C. 276, 357 S.E. 2d 641*, cert. denied,* 484 U.S. 916, 108 S. Ct. 267, 98 L. Ed. 2d 224 (1987).

Concerning the application of *Summers* to the facts of this case, I fully agree with Justice Beasley's concurring opinion that "[b]ecause the instant case is fully resolved by application of the familiar and well-settled *Terry* standard, I would not extend the *Summers* rule to justify the search of defendant." In its opinion, the majority also concluded that *Terry* justified both the seizure and the search of defendant. Therefore, it was unnecessary to apply *Summers* to the facts here.

With regard to preservation, we have long held that "[c]onstitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." *State v. Davis*, 364 N.C. 297, 301, 698 S.E. 2d 65, 67 (2010) (alteration in original) (quoting *State v. Tirado*, 358 N.C. 551, 571, 599 S.E. 2d 515, 529 (2004), *cert. denied*, 544 U.S. 909, 125 S. Ct. 1600, 161 L. Ed. 2d 285 (2005)). The majority asserts that the *Summers* issue was adequately raised in the trial court by "the trial judge consider[ing] whether the police had authority to stop a person to protect the integrity of a scene during the execution of a search warrant." The majority reasoned that "[t]his inquiry is substantially equivalent to considering whether the *Summers* rule applies, so the trial judge appears to have determined (and we agree) that the *Summers* grounds for relief 'were . . . apparent from context.' "

I do not agree that the trial judge's inquiry with defense counsel at the hearing on defendant's motion to suppress substantially equated to the *Summers* issue. The inquiry to which the majority references does not demonstrate that the *Summers* issue was "raised and passed on" at the hearing on defendant's motion to suppress.

*Davis*, 364 N.C. at 301, 698 S.E. 2d at 67 (quoting *Tirado*, 358 N.C. at 571, 599 S.E. 2d at 529).  The majority refers us to a section of the trial transcript in which the trial court questioned the defendant's attorney in the following manner:

> THE COURT:  Right.  But isn't -- if he -- if Mr. Wilson's walking up the driveway and part of the purpose for [the officer] telling him to stop is to protect the integrity of the scene where the search warrant is taking place, that's a sufficient reason just to tell him to stop where he is, isn't it?
> I mean, if there's an ongoing search of the premises, you don't want a citizen who may or may not be related to the premises just walking on up there and starting to look for his moped while they're trying to conduct the search.

The majority asserts that "this inquiry is substantially equivalent to considering whether the *Summers* rule applied."  It is not.  It is important to note that the trial court did not mention *Summers* in this excerpt, and although it inquired about the effect that the execution of the search warrant might have on the propriety of the stop, the trial court did not make any findings of fact or conclusions of law on these matters.

Also, to the extent the trial court engaged in analysis during this colloquy, the exchange was not "substantially equivalent" to a *Summers* analysis.  In *Summers*, the Court considered:  (1) that "[a] neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there," 452 U.S. at 701, 101 S. Ct. at 2593, 69 L. Ed. 2d at 349; (2) "the legitimate law

enforcement interest in preventing flight in the event that incriminating evidence is found," *id.* at 702, 101 S. Ct. at 2594, 69 L. Ed. 2d at 349; (3) that "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation," *id.* at 702-03, 101 S. Ct. at 2594, 69 L. Ed. 2d at 350 (citation omitted); (4) that "the orderly completion of the search may be facilitated if the occupants of the premises are present," *id.* at 703, 101 S. Ct. at 2594, 69 L. Ed. 2d at 350; and (5) that "[t]he connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant," *id.* at 703-04, 101 S. Ct. at 2594-95, 69 L. Ed. 2d at 350.

In *Bailey v. United States*, the Court seemingly limited the interests identified in *Summers* to: (1) whether the individual detained was an occupant, (2) officer safety, (3) facilitating the completion of the search, and (3) preventing flight. *See Bailey,* 568 U.S. 186, 195, 133 S. Ct. 1031, 1038, 185 L. Ed. 2d 19, 29 (2013). In addition, *Bailey* expressly limited the holding in *Summers* to cases in which the person was detained within "the immediate vicinity of the premises to be searched." *Id.* at 199, 133 S. Ct. at 1041, 185 L. Ed. 2d at 32.

Here, even if the trial court's inquiry could be construed to have considered and made findings on any of the *Summers* factors, the court certainly did not make a finding regarding whether defendant was an occupant of the premises being searched. The trial court merely stated that "I mean, if there's an ongoing search of

the premises, you don't want a citizen who *may or may not* be related to the premises just walking up there."  As such, the trial court, in its inquiry, made no findings on whether or not defendant was an occupant of the premises.

Whether the person detained is an occupant of the premises being searched is an indispensable aspect of the *Summers* analysis.  *See Bailey,* 568 U.S. at 200, 133 S. Ct. at 1041, 185 L. Ed. 2d at 32-33 (stating that in *Summers* the Court recognized that "[b]ecause the detention occurs in the *individual's own home,* 'it could add only minimally to the public stigma associated with the search itself and would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station' " (emphasis added) (quoting *Summers*, 452 U.S. at 702, 101 S. Ct. at 2594, 69 L. Ed. 2d at 349)); *Muehler v. Mena,* 544 U.S. 93, 98, 125 S. Ct. 1465, 1469, 161 L. Ed. 2d 299, 306 (2005) ("In *Michigan v. Summers*, 452 U.S. 692 (1981), we held that officers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.' " (quoting *Summers,* 452 U.S. at 705, 101 S. Ct. at 2595, 69 L. Ed. 2d at 351)); *Summers*, 452 U.S. at 701, 101 S. Ct. at 2593, 69 L. Ed. 2d at 349 ("Of *prime importance* in assessing the intrusion is the fact that the police had obtained a warrant to search *respondent's house* for contraband.") emphases added)).  As a result, by failing to find whether defendant was an occupant of the premises being searched, the trial court, in its inquiry, failed to engage in an analysis equivalent to *Summers*.  Therefore, in my view "the *Summers* grounds for relief" are not "apparent" from the trial court's

inquiry.  N.C. R. App. P. 10(a)(1).

The "*Summers* grounds for relief" are also not "apparent" from the trial court's order denying defendant's motion to suppress.  N.C. R. App. P 10(a)(1).  In fact, the order demonstrates that the *Summers* issue was not "raised and passed on by the trial court."  *Davis*, 364 N.C. at 301, 698 S.E. 2d at 67 (quoting *Tirado*, 358 N.C. at 571, 599 S.E. 2d at 529).  Specifically, the trial court, in its conclusions of law, analyzed defendant's detention only under *Terry v. Ohio* and neither defendant nor the trial court mentioned *Summers.*  Further, the order contains no findings relevant to the rule discussed by the majority that a person is an occupant for the purposes of *Summers* when the person "poses a real threat to the safe and efficient execution of a search warrant."  *Bailey,* 568 U.S. at 201, 133 S. Ct. at 1042, 185 L. Ed. 2d at 33.  Specifically, the trial court's order made no findings concerning whether defendant was a threat.  Therefore, the majority's assertions that "[w]e believe defendant posed a real threat to the safe and efficient execution of the search warrant in this case," and "[i]t was obvious that the defendant posed a threat" are not reflected by findings or conclusions in the actual order.

Lastly, contrary to the majority's conclusion, our decision in *Austin* does not stand for the principle that the State, as the appellee before the Court of Appeals, can argue an unpreserved constitutional issue.  The majority relies on a quote of *Austin* in which we stated that "[t]he question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable."

*Austin*, 320 N.C. at 290, 357 S.E. 2d at 650 (citing *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E. 2d 867, 869 (1957)). Although this language may appear to support the majority's assertion, this Court in *Austin* did not allow a party to bring an unpreserved constitutional argument on appeal.

In *Austin*, defendant challenged the trial court's denial of his motion to suppress, arguing that the trial judge applied an incorrect legal standard on the issue of whether intoxication invalidated his voluntary consent to a search. *See id.* at 289-90, 357 S.E. 2d at 649-650. In denying defendant's motion to suppress, the trial court concluded that defendant's intoxication did not invalidate his consent to the search, because it did not "amount[ ] to a mania as to lead the user to be unconscious of the meaning of his words." *Id.* at 289, 357 S.E. 2d at 650. Defendant contended that this was an improper legal standard. *Id.* at 290, 357 S.E. 2d at 650. Rejecting defendant's argument, this Court reasoned that "[a]ssuming arguendo that the trial court's reasoning for denying defendant's motion to suppress was incorrect, we are not required on this basis alone to determine that the ruling was erroneous." *Id.* at 290, 357 S.E. 2d at 650 (citing *State v. Gardner*, 316 N.C. 605, 342 S.E. 2d 872 (1986)). We added that "[a] correct decision of a lower court will not be disturbed on review simply because an insufficient or superfluous reason is assigned. The question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable." *Id.* at 290, 357 S.E. 2d at 650 (citing *Blackwell*, 246 N.C. at 644, 99 S.E. 2d at 869). We concluded, ultimately, that "[t]he crucial inquiry

for this Court is admissibility and whether the ultimate ruling was supported by the evidence." *Id.* at 290, 357 S.E. 2d at 650.

The facts of *Austin,* however, are distinguishable from the facts here, because in *Austin* defendant explicitly raised the issue of the voluntariness of his consent to the search before the trial court. *See id.* at 290, 357 S.E. 2d at 650 ("[D]efendant challenged the voluntariness of his consent on two grounds: his alleged intoxication; and his low intelligence . . . ."). Therefore, *Austin* did not involve an unpreserved constitutional argument. *See id.* at 290, 357 S.E. 2d at 650.

Here, as demonstrated above, the trial court's inquiry with defendant's counsel did not preserve the *Summers* issue. Further, as demonstrated above, neither the trial court's inquiry, nor its order denying defendant's motion to suppress made the *Summers* issue "apparent from the context." N.C. R. App. P. 10(a)(1). Moreover, the *Summers* issue was not "apparent" from the State's argument before the trial court on defendant's motion to suppress. N.C. R. App. P 10(a)(1). The State asserted that the case was "just as the thrust of the written motion seems to indicate, purely a *Terry* issue." The State then proceeded to frame its constitutional claim as a *Terry* issue without ever mentioning *Summers.* As a result, the majority cannot rely on *Austin* for the principle that an unpreserved constitutional issue can be argued for the first time on appeal. *Austin* did not abrogate our general rule that "[c]onstitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." *Davis,* 364 N.C. at 301, 698 S.E. 2d at 67

(alteration in original) (quoting *Tirado*, 358 N.C. at 571, 599 S.E. 2d at 529).

For the above reasons, I agree with the majority that defendant's detention was justified under *Terry*, and that our granting of the State's petition for discretionary review allowed it to argue *Summers* before this Court. However, I disagree with the majority's application of *Summers* here because *Terry* wholly resolved the issue of whether the seizure and search of defendant were constitutional, the trial judge's colloquy with defense counsel did not adequately preserve the *Summers* issue, the *Summers* issue was not "apparent from the context" of the discussion in the trial court as Rule 10(a)(1) of our Rules of Appellate Procedure contemplates, and our decision in *Austin* does not stand for the principle that an appellee before the Court of Appeals can bring an unpreserved constitutional issue for the first time on appeal. Therefore, I respectfully concur in part and concur in the result in part.

Justice BEASLEY and Justice MORGAN join in this concurring opinion.

Justice BEASLEY, concurring in the result only.

I join in Justice Hudson's concurring opinion. Nonetheless, I write separately to make clear that, regardless of whether the State's *Summers* argument was preserved for appellate review, I would decline to address it in this case. Because the instant case is fully resolved by application of the familiar and well-settled *Terry* standard, I would not extend the *Summers* rule to justify the search of defendant. Thus, for the reasons stated below, I concur only in the result reached by the majority.

The majority concludes that "a person is an occupant for the purposes of the *Summers* rule if he 'poses a real threat to the safe and efficient execution of a search warrant.'" *Majority Opinion* at 9 (quoting *Bailey v. United States*, 568 U.S. 186, 201, 185 L. Ed. 2d 19, 33 (2013)). In addition to being only tangentially related to the rationales underlying *Summers*, this definition suffers from both overbreadth and vagueness.

In *Michigan v. Summers*, the Supreme Court held "that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705, 69 L. Ed. 2d 340, 351 (1981) (footnotes omitted). The Court has not defined the term "occupants" for purposes of the *Summers* doctrine, but it did explicitly state the rationales justifying the categorical rule: (1) the risk of the occupant fleeing the searched premises if contraband is found; (2) the risk of harm to law enforcement in the event of "sudden violence or frantic efforts to conceal or

destroy evidence,"[1] and (3) the possibility that "the orderly completion of the search may be facilitated" by the presence of the occupants of the premises. *Id.* at 702-03, 69 L. Ed. 2d at 349-50.

Given the Court's stated justifications for *Summers*'s categorical rule, the term "occupant" can most reasonably be interpreted as a resident of the searched premises or a person physically on the premises that are the subject of the search warrant at the time the search is commenced.[2] A nonresident arriving on the scene after the search has commenced has no reason to flee upon the discovery of contraband, to attempt to dispose of evidence, to interfere with the search, or to harm law enforcement officers because, unlike a resident or a person found at the scene when the officers arrive to conduct the search, evidence of wrongdoing discovered on the premises could not reasonably be attributed to him.[3] Furthermore, the presence of a

---

[1] Notably, the Court did not rely on a generalized officer safety rationale, but on the specific threat to officers presented by the presence of an individual attempting to destroy or conceal evidence—someone who would reasonably be implicated in criminal activity should contraband be found.

[2] Such an interpretation would also be consistent with the plain meaning of the word, *see Occupant, Black's Law Dictionary* (10th ed. 2014) ("1. Someone who has possessory rights in, or control over, certain property or premises. 2. Someone who acquires title by occupancy."); *Occupant, The American Heritage Dictionary of the English Language* 1215 (4th ed. 2000) ("1. One that occupies a position or place . . . 2. One who has certain legal rights to or control over the premises occupied; a tenant or owner. 3. *Law* One that is the first to take possession of something previously unowned."), and with the Court's later language on the topic, *see Bailey v. United States*, 568 U.S. 186, 201, 185 L. Ed. 2d 19, 33-34 (2013) (noting that one factor to consider in determining whether a person is subject to *Summers*'s categorical rule is "whether the occupant was within the line of sight of *his dwelling*" (emphasis added)). The majority's definition renders the word "occupant" interchangeable with terms no more specific than "person" or "individual."

[3] That a nonresident who arrives on the scene after the search commences is not

nonresident could do little to facilitate the search—a nonresident would not be able to open locked doors or containers and would have no interest in avoiding "the use of force that is not only damaging to property but may also delay the completion of the [search]," as contemplated by the Court in *Summers*. *See id.* at 703, 69 L. Ed. 2d at 350. Moreover, the existence of a valid search warrant—the foundation on which *Summers*'s categorical rule is built—is premised on a judicial officer's determination that "police have probable cause to believe that *someone in the home* is committing a crime." *Id.* at 703, 69 L. Ed. 2d at 350 (emphasis added). That finding of probable cause does not extend reasonably to a nonresident or a person who is not in the home during the search.

The majority's definition of "occupant" requires no connection whatsoever to the property that is the subject of a search warrant or the suspected criminal activity—only that the person detained "poses a real threat to the safe and efficient execution" of the warrant. It is not unusual for a crowd of curious onlookers to gather along a police perimeter. How an officer executing a search warrant might differentiate a person posing a real threat from a neighbor or an innocent bystander is unclear, as any person in the vicinity of a police search could potentially interfere with the search or harm officers. Moreover, if an officer were able to conclude that a

---

categorically subject to suspicionless detention does not mean he cannot be detained. As in the instant case, law enforcement officers may detain an individual when the totality of the circumstances supports reasonable suspicion that criminal activity is afoot, and officers may search him when they reasonably believe he is armed. *See Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968).

person posed such a threat, invocation of *Summers*'s categorical rule would be unnecessary because, as was the case here, the detention and search of that person would be justified by *Terry*.

The majority contends that law enforcement officers' authority to "mitigate the risk of someone entering the premises during a search by taking routine precautions, for instance by erecting barricades or posting someone on the perimeter or at the door," gives rise to "some categorical authority for police to detain individuals who attempt to circumvent them." *Majority Opinion* at 9-10 (citations omitted). The power to exclude, however, is not the same as the power to detain; no Fourth Amendment issue arises from an individual's mere exclusion from an area. Law enforcement officers can, and routinely do, exclude members of the public from geographical areas for a variety of reasons, including during the execution of search warrants. The proper response when a person attempts to circumvent officers' instructions is an entirely separate question from whether all individuals in the vicinity of an active search—any of whom could conceivably pose a threat to officers— should be subject to suspicionless detention. Where, as here, an individual *does* attempt to bypass a police perimeter, his suspicious behavior likely justifies a *Terry* stop. Thus, the majority's extension of *Summers*'s categorical rule dramatically expands the government's power over individuals but provides no additional protection for officers in the field.

Accordingly, I concur only in today's result.